**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

_____

Juan Mendez, Byron Herman, and
Jess Gonzalez, individually and on behalf of
similarly situated persons,

                Plaintiffs,

v.

Pure Foods Management Group, Inc.,
Shahid Hashmi, Fazal Panezai,
Albany Avenue Favorite Chicken, LLC,
Charter Oak's Favorite Chicken, LLC,
New London Favorite Chicken, LLC,
North Haven's Favorite Chicken, LLC,
North Heaven's Favorite Chicken, LLC,
Trumbull's Favorite Chicken, LLC,
Wallingford's Favorite Chicken, LLC,
Carousel Center's Favorite Chicken, LLC,
Palisades Favorite Chicken, LLC,
South Shore's Favorite Chicken, LLC,
Chicopee's Favorite Chicken, LLC,
Holyoke's Favorite Chicken, LLC,
Mass. Favorite Chicken I, LLC,
Springfield Favorite Chicken, LLC,
Rhode Island Favorite Chicken I, Inc.,
Rhode Island Favorite Chicken II, Inc.,
Rhode Island Favorite Chicken III, LLC,
Harrison's Favorite Chicken, LLC,
Hudson Mall's Favorite Chicken, LLC,
Jersey City's Favorite Chicken, LLC,
Journal Square's Favorite Chicken, LLC,
Meadowland's Favorite Chicken, LLC,
Newport Plaza's Favorite Chicken, LLC,
West New York's Favorite Chicken, Inc., and
Dulles Town Center Favorite Chicken, LLC

                Defendants.            October 14, 2014

_____


## **COMPLAINT**

Plaintiffs, individually and on behalf of similarly situated persons, for their Complaint against Defendants, state and allege as follows:

1.      Defendants own and operate approximately 36 Popeye's franchise stores in Connecticut, New York, Massachusetts, Rhode Island, New Jersey and Virginia. Plaintiffs bring this action against Defendants for engaging in a systematic scheme of wage theft against their hourly employees.  This scheme includes failure to properly record and pay their hourly employees for all time worked.

2.      Plaintiffs bring this lawsuit as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and as a class action under Connecticut law to recover unpaid wages owed to themselves and similarly situated hourly employees of Defendants at their Popeye's stores.

**Jurisdiction and Venue**

3.      The FLSA authorizes court actions by private parties to recover damages for violation of its wage and hour provisions.  Jurisdiction over Plaintiffs' claims are based on 29 U.S.C. § 216(b), 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (pendent claims).

4.      Venue in this District is proper under 28 U.S.C. § 1391 because Defendants operate Popeye's franchise stores in this District, Defendants employed Plaintiffs in this District, and a substantial part of the events giving rise to the claim herein occurred in this District.

**Parties**

5.      Defendant Pure Foods Management Group, Inc. is a New Jersey corporation maintaining its principal of business at 605 Broadway, Bayonne, New

2

Jersey.

6.      Defendant Shahid Hashmi is an individual residing at 16110 Germantown Road, Darnestown, Maryland.

7.      Defendant Fazal Panezai is an individual residing at 431 Fawns Run, Morganville, New Jersey.

8.      Defendant Albany Avenue's Favorite Chicken, LLC is a Connecticut limited liability company with its principal place of business at 964 Albany Avenue, Hartford, Connecticut.

9.      Defendant Charter Oak's Favorite Chicken, LLC is a Connecticut limited liability company with its principal place of business at 529 Flatbush Avenue, Hartford, Connecticut.

10.      Defendant New London's Favorite Chicken, LLC is a Connecticut limited liability company with its principal place of business at 455 Colman Street, New London, Connecticut.

11.      Defendant North Haven's Favorite Chicken, LLC is a Connecticut limited liability company with its principal place of business at 173 Washington Street, North Haven, Connecticut.

12.      Defendant North Heaven's Favorite Chicken, LLC is a Connecticut limited liability company with its principal place of business at 173 Washington Street, North Haven, Connecticut.

13.      Defendant Trumbull's Favorite Chicken, LLC is a Connecticut limited liability company with its principal place of business at 5065 Main Street, Trumbull, Connecticut.

14.    Defendant Wallingford's Favorite Chicken, LLC is a Connecticut limited liability company with its principal place of business at 859 North Colony Road, Wallingford, Connecticut.

15.    Defendant Carousel Center's Favorite Chicken, LLC is a New York limited liability company with its principal place of business at 1 Carousel Center Drive, Syracuse, New York.

16.    Defendant Palisades Favorite Chicken, LLC is a New York limited liability company with its principal place of business at 3564 Palisades Center, West Nyack, New York.

17.    Defendant South Shore's Favorite Chicken, LLC is a New York limited liability company with its principal place of business at 15 Nicolisi Drive, Staten Island, New York.

18.    Defendant Chicopee's Favorite Chicken, LLC is a Massachusetts limited liability company with its principal place of business at 753 Memorial Drive, Chicopee, Massachusetts.

19.    Defendant Holyoke's Favorite Chicken is a Massachusetts limited liability company with its principal place of business at 2241 N. Hampton Road, Holyoke, Massachusetts.

20.    Defendant Springfield Favorite Chicken, LLC is a Massachusetts limited liability company with its principal place of business at 625 Boston Road, Springfield, Massachusetts.

21.    Defendant Mass. Favorite Chicken I, Inc. is a Massachusetts for profit corporation with its principal place of business at 200 Westgate Drive, Brockton,

Massachusetts.

22.    Defendant Rhode Island Favorite Chicken I, Inc. is a Rhode Island for profit corporation with its principal place of business at 37 Providence Place Mall, Providence, Rhode Island.

23.  Defendant Rhode Island Favorite Chicken II, Inc. is a Rhode Island for profit corporation with its principal place of business at 77 Reservoir Avenue, Providence, Rhode Island.

24. Defendant Rhode Island Favorite Chicken III, LLC is a Rhode Island limited liability company with its principal place of business at 539 Smith Street, Providence, Rhode Island.

25.    Defendant Harrison's Favorite Chicken, LLC is a New Jersey limited liability company with its principal place of business at 7 Passaic Avenue, Harrison, New Jersey.

26.    Defendant Hudson Mall's Favorite Chicken, LLC is a New Jersey limited liability company with its principal place of business at 701 State Rt 440 #3, Jersey City, New Jersey.

27.    Defendant Jersey City's Favorite Chicken, LLC is a New Jersey limited liability company with its principal place of business at 30 Mall Drive W #3288, Jersey City, New Jersey.

28.    Defendant Journal Square's Favorite Chicken, LLC is a New Jersey limited liability company with its principal place of business at 924 Bergen Avenue, Jersey City, New Jersey.

29.    Defendant Meadowland's Favorite Chicken, LLC is a New Jersey limited

5

liability company with its principal place of business at 104 Meadow Road, Rutherford, New Jersey.

30.    Defendant Newport Plaza's Favorite Chicken, LLC is a New Jersey limited liability company with its principal place of business at 125 18th Street, Jersey City, New Jersey.

31.    Defendant West New York's Favorite Chicken, Inc. is a New Jersey profit corporation with its principal place of business at 5401 Bergenline Avenue, West New York, New Jersey.

32.    Defendant Dulles Town Center's Favorite Chicken, LLC is a Virginia limited liability company with its principal place of business at 21100 Dulles Town Circle, Sterling, Virginia.

33.    Defendants compromise a single integrated enterprise and jointly operate the chain of approximately 36 Popeye's franchise stores as they maintain interrelated operations, centralized control of labor relations, common management, common ownership and common financial control.  Because the work performed by Plaintiffs and all other hourly employees simultaneously benefited all Defendants and/or directly or indirectly furthered their joint interests, Defendants are collectively the joint employers of Plaintiffs and other similarly situated hour employees under both the FLSA's and Connecticut's broad definition of "employer."

34.    Plaintiff Juan Mendez was employed by Defendants from approximately April 2013 to November 2013 as a maintenance worker at their Popeye's stores in Hartford, Wallingford and North Haven, Connecticut, which is located within this District. Plaintiff Mendez's Consent to Become a Party Plaintiff under 29 U.S.C. § 216(b) is

attached hereto as Exhibit 1.

35.    Plaintiff Byron Herman was employed by Defendants from approximately October 2013 to March 2014 as a cook at their Popeye's store in Hartford, Connecticut, which is located within this District.  Plaintiff Herman's Consent to Become a Party Plaintiff under 29 U.S.C. § 216(b) is attached hereto as Exhibit 2.

36.    Plaintiff Jess Gonzalez was employed by Defendants from approximately May 2013 to November 2013 as a cashier at their Popeye's store in Hartford, Connecticut, which is located within this District.  Plaintiff Gonzalez's Consent to Become a Party Plaintiff under 29 U.S.C. § 216(b) is attached hereto as Exhibit 3.

**General Allegations**

***Defendants' Business***

37.    Defendants own and operate approximately 36 Popeye's franchise stores in Connecticut, New York, Massachusetts, Rhode Island, New Jersey and Virginia.

38.    Defendants' restaurants prepare fried chicken and other food items for dine-in or take-out from their restaurants.

39.    Defendants employ hourly employees, like Plaintiffs in this case, as cashiers, drive-thru cashiers, shift managers, cooks and/or maintenance personnel.

***Defendants' Wage Theft***

40.    During relevant times, Defendants have engaged in a systematic scheme of wage theft against their hourly employees, explained below, that has resulted in a failure to properly record and pay them for all time worked.

41.    As part of this scheme, Defendants require hourly employees to report to work according to a posted work schedule, only to tell them not to clock in for their shift

until Defendants determine that they are sufficiently busy.

42.    The hourly employees' wait time before Defendants permit them to clock in is too short to permit the hourly employees to use the time for their own benefit. Instead, they report for work as scheduled and have to wait until they can clock in for their shift.

43.    Defendants, however, do not compensate the hourly employees for the time that they have to wait before beginning their shift.

44.    As part of this scheme, Defendants also require hourly employees to clock out to run errands for Defendants, including making purchases for Defendants and picking up or dropping things off for Defendants.

45.    Defendants require hourly employees to use their own vehicles to run errands.

46.    Defendants, however, do not compensate the hourly employees for either their time spent running errands or their mileage incurred in running errands.

47.    As part of this scheme, Defendants also require hourly employees to report to work according to a posted work schedule at the restaurant for which they had been hired, only to direct them to report to a different restaurant for work either at the beginning of their shift, during their shift, or at the end of their shift.

48.    Defendants require hourly employees to use their own vehicles to travel from one restaurant to another.

49.    Defendants, however, do not compensate the hourly employees for either the time spent traveling from one restaurant to another or their mileage incurred in traveling from one restaurant to another.

50.    As part of this scheme, Defendants also require hourly employees to work

8

through their meal breaks without pay.

51.    Defendants require hourly employees to clock out for their meal break and then work through it, or if the hourly employees do not clock out, Defendants deduct a 30-minute meal break for each day that they worked even though Defendants provided no meal break.

52.    As part of this scheme, Defendants require hourly employees to work for a portion of their work week at one restaurant and a portion of their work week at one or more other restaurants, such that the total number of hours worked by the hourly employees over the course of one week exceeded 40 hours.

53.    In doing so, Defendants also issue separate pay checks to the hourly employees for each of the restaurants at which they worked, such that they receive only straight time and do not receive overtime pay.

54.    As part of this scheme, hourly employees clock in and out as directed by Defendants, only to have Defendants make changes to their clock-in and/or clock-out times to shave the hourly employees' wages.

55.    In doing so, Defendants do not pay the hourly employees their hourly rate for hours they actually work, and/or their overtime rates for hours they actually work in excess of 40 hours over the course of one week.

56.    Finally, as part of this scheme, Defendants require hourly employees to work seven or more days straight.

57.    In doing so, Defendants do not pay the hourly employees their overtime rates.

**Class and Collective Acton Allegations**

58.     Plaintiffs bring their FLSA claims as an "opt-in" collective action on behalf of similarly situated hourly employees pursuant to 219 U.S.C. § 216(b).

59.     The FLSA claims may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b).

60.     Plaintiffs, individually and on behalf of other similarly situated employees, seek relief on a collective basis challenging Defendants' practices of failing to pay employees federal minimum wage and overtime.  The number and identity of other plaintiffs yet to opt-in may be ascertained from Defendants' records, and potential class members may be modified of the pendency of this action via mail.

61.     Plaintiffs and all of Defendants' hourly employees are similarly situated in that:

    a.     They have worked for Defendants as cashiers, drive-thru cashiers, shift managers, cooks and/or maintenance personnel;

    b.     They were subject to the same pay policies and practices of Defendants; and

    c.     They were paid at or near the federal minimum wage.

62.     Plaintiffs bring Counts III-VII as a class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and as the Class Representatives of the following persons (the "Class"): All current and former hourly employees of Defendant in the State of Connecticut since the date two years preceding the filing of this Complaint.

63.     The state law claims, if certified for class-wide treatment, are brought on behalf of all similarly situated persons who do not opt-out of the Class.

64.     Plaintiffs' state law claims satisfy the numerosity, commonality, typicality,

10

adequacy, predominance and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

65.    The Class satisfies the numerosity standard as it consists of at least hundreds of persons who are geographically dispersed and, therefore, joinder of all Class members in a single action is impracticable.

66.    Questions of fact and law common to the Class predominate over any questions affecting only individual members.  The questions of law and fact common to the Class arising from Defendants' actions include, without limitation:

a.    Whether Defendants failed to pay Class members the minimum wage required by Connecticut law;

b.    Whether Defendants failed to pay Class members overtime wages required by Connecticut law;

c.    Whether Defendants failed to pay Class members all wages due as required by Connecticut law;

d.    Whether Defendants failed to keep accurate time records for Class members as required by Connecticut law; and

e.    Whether Defendants failed to provide meal periods for Class members as required by Connecticut law.

67.    The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

68.    Plaintiffs' claims are typical of those of the Class in that:

a.    Plaintiffs and the Class have worked for Defendants as cashiers, drive-thru cashiers, shift managers, cooks and/or maintenance personnel;

b.    Plaintiffs and the Class were subject to the same pay policies and practices of Defendants; and

c.    Plaintiffs and the Class were paid at or near the Connecticut minimum wage.

69.    A class action is the appropriate method for the fair and efficient adjudication of this controversy.  Defendants have acted or refused to act on grounds generally applicable to the Class.

70.    Plaintiffs are adequate representatives of the Class because they are members of the Class and their interests do not conflict with the interests of the members of the Class they seek to represent.  The interests of the members of the Class will be fairly and adequately protected by Plaintiffs and the undersigned counsel, who have extensive experience prosecuting complex wage and hour, employment, and class action litigation.

71.    Maintenance of this action as a class action is superior to other available methods for fairly and efficiently adjudicating the controversy as members of the Class have little interest in individually controlling the prosecution of separate class actions, no other litigation is pending over the same controversy, it is desirable to concentrate the litigation in this Court due to the relatively small recoveries per member of the Class, and there are no material difficulties impairing the management of a class action.

72.    It would be impracticable and undesirable for each member of the Class who suffered harm to bring a separate action.  In addition, the maintenance of separate

12

actions would place a substantial and unnecessary burden on the courts and could

result in inconsistent adjudications, while a single class action can determine, with

judicial economy, the rights of all Class members.

**Count I – FLSA Minimum Wage Violations**

73.    Plaintiffs reassert and re-allege the allegations set forth above.

74.    During relevant times, Plaintiffs and all other similarly situated hourly

employees have been entitled to the rights, protections, and benefits provided under the

FLSA, 29 U.S.C. §§ 201, et seq.

75.    The FLSA regulates, among other things, the payment of minimum wage

by employers whose employees are engaged in interstate commerce, or engaged in the

production of goods for commerce, or employed in an enterprise engaged in commerce

or in the production of goods for commerce. 29 U.S.C. §206(a).

76.    Defendants are subject to the FLSA's minimum wage requirements

because they are an enterprise engaged in interstate commerce, and their employees

are engaged in commerce.

77.    Under Section 6 of the FLSA, codified at 29 U.S.C. § 206, employees have

been entitled to be compensated at a rate of at least $7.25 per hour since July 24, 2009.

78.    Defendants have reimbursed hourly employees less than the federal

minimum wage by their systematic scheme of wage theft described above.

79.    Defendants knew or should have known that their pay policies and

practices result in failure to compensate hourly employees at the federal minimum

wage.

80.    Defendants, pursuant to their policy and practice, violated the FLSA by refusing and failing to pay federal minimum wage to Plaintiffs and other similarly situated employees.

81.    Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from federal minimum wage obligations. None of the FLSA exemptions apply to Plaintiffs or other similarly situated hourly employees.

82.    Plaintiffs and all similarly situated delivery drivers are victims of a uniform and employer-based compensation policy. This uniform policy, in violation of the FLSA, has been applied, and continues to be applied, to all hourly employees in Defendants' stores.

83.    Plaintiffs and all similarly situated employees are entitled to damages equal to the minimum wage minus actual wages received within three years from the date each Plaintiff joins this case, plus periods of equitable tolling, because Defendants acted willfully and knew, or showed reckless disregard for, whether their conduct was unlawful.

84.    Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result, Plaintiffs and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid minimum wages under 29 U.S.C. § 216(b). Alternatively, should the Court find Defendants did not act willfully in failing to pay minimum wage, Plaintiffs and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

85.    As a result of the aforesaid willful violations of the FLSA's minimum wage

provisions, minimum wage compensation has been unlawfully withheld by Defendants from Plaintiffs and all similarly situated employees. Accordingly, Defendants are liable under 29 U.S.C. § 216(b), together with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, Plaintiffs and all similarly situated hourly employees demand judgment against Defendants and request: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed by Section 16(b) of the FLSA; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

**Count II – FLSA Overtime Violations**

86.    Plaintiffs reassert and re-allege the allegations set forth above.

87.    The FLSA also regulates the payment of overtime wages.

88.    Under Section 8 of the FLSA, codified at 29 U.S.C. § 208, employees have been entitled to be compensated at a rate of time and a half for hours worked in excess of 40 in a given week.

89.    Defendants have failed to pay overtime because of their systematic scheme of wage theft described above.

90.    Defendants knew or should have known that their pay policies and practices result in failure to compensate hourly employees for overtime.

91.    Defendants, pursuant to their policy and practice, violated the FLSA by refusing and failing to pay overtime to Plaintiffs and other similarly situated employees.

15

92.     Plaintiffs and all similarly situated delivery drivers are victims of a uniform and employer-based compensation policy. This uniform policy, in violation of the FLSA, has been applied, and continues to be applied, to all hourly employees in Defendants' stores.

93.     Plaintiffs and all similarly situated employees are entitled to damages equal to time and a half of their actual wages for hours worked in excess of 40 hours in a given week within three years from the date each Plaintiff joins this case, plus periods of equitable tolling, because Defendants acted willfully and knew, or showed reckless disregard for, whether their conduct was unlawful.

94.     Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result, Plaintiffs and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime under 29 U.S.C. § 216(b). Alternatively, should the Court find Defendants did not act willfully in failing to pay overtime, Plaintiffs and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

95.     As a result of the aforesaid willful violations of the FLSA's overtime provisions, overtime compensation has been unlawfully withheld by Defendants from Plaintiffs and all similarly situated employees. Accordingly, Defendants are liable under 29 U.S.C. § 216(b), together with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, Plaintiffs and all similarly situated hourly employees demand

judgment against Defendants and request: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed by Section 16(b) of the FLSA; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

**Count III – Connecticut Minimum Wage Violations**

96.     Plaintiffs reassert and re-allege the allegations set forth above.

97.     During relevant times, Plaintiff and the Class have been entitled to the rights, protections and benefits provided under Connecticut's Wage Act, C.G.S.A. § 31-58, et seq.

98.     Connecticut's Wage Act regulates, among other things, the payment of minimum wage by employers who employ any person in Connecticut, subject to limited exemptions not applicable herein.  C.G.S.A. § 31-60, § 31-68.

99.     During relevant times, Defendants were the "employer" of Plaintiffs and the Class within the meaning of Connecticut's Wage Act.  C.G.S.A. § 31-58(d).

100.    During relevant times, Plaintiffs and the Class were Defendants' "employees" within the meaning of Connecticut's Wage Act.  C.G.S.A. § 31-58(e).

101.    Connecticut's Wage Act exempts certain categories of employees from Connecticut's minimum wage and other obligations, none of which apply to Plaintiffs or the Class.

102.    Pursuant to Connecticut's Wage Act, employees have been entitled to be compensated at a rate of $8.25 per hour from January 1, 2010 through December 31, 2013 and at a rate of $8.70 per hour from January 1, 2014, to the present.  C.G.S.A. §

31-58(i).

103.    Defendants, pursuant to their policy and practice, violated Connecticut's Wage Act by refusing and failing to pay Plaintiffs and the Class minimum wage by their systematic scheme of wage theft described above.

104.    Plaintiffs and the Class are victims of a uniform and employer-based compensation policy.  Upon information and belief, this uniform policy, in violation of Connecticut's Wage Act, has been applied, and continues to be applied, to all Class members in Defendants' other Popeye's stores in Connecticut.

105.    Plaintiffs and all similarly situated employees are entitled to actual damages equal to the difference between the minimum wage and actual wages received within the two years preceding the filing of this Complaint.

106.    Defendants' failure to pay minimum wage is willful, wanton, arbitrary and/or in bad faith.

107.    Plaintiffs and the Class are entitled to double damages.

108.    Plaintiffs and the Class are entitled to an award of pre-judgment and post-judgment interest at the applicable legal rate.

109.    Defendants are liable for Plaintiffs' costs and attorneys' fees incurred in this action.

WHEREFORE, Plaintiffs and the Class demand judgment against Defendants and pray for: (1) compensatory damages; (2) double damages; (3) costs of litigation and attorneys' fees as allowed by C.G.S.A. § 31-68(a); (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

18

**Count IV – Connecticut Overtime Violations**

110.    Plaintiffs reassert and re-allege the allegations set forth above.

111.    Connecticut's Wage Act also regulates the payment of overtime wages. C.G.S.A. § 31-60, § 31-68.

112.    Defendants, pursuant to their policy and practice, violated Connecticut's Wage Act by refusing and failing to pay Plaintiffs and the Class overtime by their systematic scheme of wage theft described above.

113.    Plaintiffs and the Class are victims of a uniform and employer-based compensation policy.  On information and belief, this uniform policy, in violation of Connecticut's Wage Act, has been applied, and continues to be applied, consistently across all of Defendants' Popeye's stores in Connecticut.

114.    Plaintiffs and all similarly situated employees are entitled to actual damages equal to time and a half of their actual wages for hours worked in excess of 40 hours in a given week within the two years preceding the filing of this Complaint.

115.    Defendants' failure to pay overtime is willful, wanton, arbitrary and/or in bad faith.

116.    Plaintiffs and the Class are entitled to double damages.

117.    Plaintiffs and the Class are entitled to an award of pre-judgment and post-judgment interest at the applicable legal rate.

118.    Defendants are liable for Plaintiffs' costs and attorneys' fees incurred in this action.

WHEREFORE, on Count IV of this Complaint, Plaintiffs and the Class demand judgment against Defendants and pray for: (1) compensatory damages; (2) double

damages; (3) costs of litigation and attorneys' fees as allowed by C.G.S.A. § 31-68(a)
(4) pre-judgment and post-judgment interest as provided by law; and (5) such other
relief as the Court deems fair and equitable.

**Count V – Connecticut Unpaid Wages Violation**

119.    Plaintiffs reassert and re-allege the allegations set forth above.

120.    Connecticut's Wage Act also regulates the timely payment of wages.

121.    Connecticut's Wage Act requires that an employer compensate an
employee for all hours worked on a weekly basis, pursuant to Conn.Gen.Stat. §31-71b;
and by not later than the next regular pay-day, upon the termination of employment,
pursuant to Conn.Gen.Stat. §31-71c.

122.    Connecticut's Wage Act further requires that where the amount of wages
are in dispute, that an employer pay, without condition and in a timely manner, all wages
that the employer concedes are due, pursuant to Conn.Gen.Stat. §31-71d; and that no
portion be withheld except upon written authorization of the employee, pursuant to
Conn.Gen.Stat. §31-71e.

123.    Defendants, pursuant to their policy and practice, violated Connecticut's
Wage Act by refusing and failing to pay Plaintiffs and the Class all wages due and owing
by their systematic scheme of wage theft described above.

124.    Plaintiffs and the Class are victims of a uniform and employer-based
compensation policy.  On information and belief, this uniform policy, in violation of
Connecticut's Wage Act, has been applied, and continues to be applied, consistently
across all of Defendants' Popeye's stores in Connecticut.

20

125.    Plaintiffs and all similarly situated employees are entitled to actual damages equal to wages for all unpaid hours worked within the two years preceding the filing of this Complaint.

126.    Defendants' failure to pay wages is willful, wanton, arbitrary and/or in bad faith.

127.    Plaintiffs and the Class are entitled to double damages.

128.    Plaintiffs and the Class are entitled to an award of pre-judgment and post-judgment interest at the applicable legal rate.

129.    Defendants are liable for Plaintiffs' costs and attorneys' fees incurred in this action.

WHEREFORE, on Count V of this Complaint, Plaintiff and the Class demand judgment against Defendants and pray for: (1) compensatory damages; (2) double damages; (3) costs of litigation and attorneys' fees as allowed by C.G.S.A. §31-72; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

**Count VI – Connecticut Record Keeping Violations**

130.    Plaintiffs reassert and re-allege the allegations set forth above.

131.    Connecticut's Wage Act also regulates an employer's record-keeping obligations.

132.    Connecticut's Wage Act requires an employer to keep a true and accurate record of the hours worked by each employee for a period of three years.  C.G.S.A. § 31-66.

133.    Defendants, pursuant to their policy and practice, violated Connecticut's Wage Act by refusing and failing to keep accurate records of the hours worked by Plaintiffs and the Class by their systematic scheme of wage theft described above.

134.    Plaintiffs and the Class are victims of a uniform and employer-based compensation policy.  On information and belief, this uniform policy, in violation of Connecticut's Wage Act, has been applied, and continues to be applied, consistently across all of Defendants' Popeye's stores in Connecticut.

135.    Plaintiffs and all similarly situated employees are entitled to actual damages for Defendants' violations.

WHEREFORE, on Count VI of this Complaint, Plaintiff and the Class demand judgment against Defendants and pray for: (1) Compensatory damages; (2) Pre and post-judgment interest on all monies due; (3) A declaratory ruling that the Defendants are in violation of the rights of the Plaintiffs and those similarly situated under the Connecticut's Wage Act; and (4) Such other relief as the Court deems fair and equitable.

**Count VII – Connecticut Meal Period Violations**

136.    Plaintiffs reassert and re-allege the allegations set forth above.

137.    Connecticut's Wage Act also regulates meal periods.

138.    Connecticut's Wage Act requires an employer to provide meal periods of at least 30 consecutive minutes for any employee who is required to work for seven and one-half or more consecutive hours.  According to the statute, the meal period is to be given at some time after the first two hours of work and before the last two hours.

22

C.G.S.A. § 31-51ii(a).

139.    Defendants, pursuant to their policy and practice, violated Connecticut's Wage Act by refusing and failing to provide required meal periods to their employees by their systematic scheme of wage theft described above.

140.    Plaintiffs and the Class are victims of a uniform and employer-based compensation policy.  On information and belief, this uniform policy, in violation of Connecticut's Wage Act, has been applied, and continues to be applied, consistently across all of Defendants' Popeye's stores in Connecticut.

141.    Plaintiffs and all similarly situated employees are entitled to actual damages for Defendants' violations.

WHEREFORE, on Count VII of this Complaint, Plaintiff and the Class demand judgment against Defendants and pray for: (1) Compensatory damages; (2) Pre and post-judgment interest on all monies due; (3) A declaratory ruling that the Defendants are in violation of the rights of the Plaintiffs and those similarly situated under Connecticut's Wage Act; and (4) Such other relief as the Court deems fair and equitable.

**Demand for Jury Trial**

Plaintiffs hereby request a trial by jury of all issues triable by jury.

Dated:        10/14/14

Respectfully submitted,

_____/s/_____

Kenneth J. Krayeske, Esq.
Kenneth J. Krayeske Law Offices
1 Linden Place, Unit 107

23

Hartford, CT 06106
(860) 995-5842
 FAX: (860) 760-6590
eMail: attorney@kenkrayeske.com
Federal Bar # CT28498


_____/s/_____
Richard M. Paul (pro hac forthcoming)
Paul McInnes LLP
2000 Baltimore, Suite 100
Kansas City, MO 64108
(816) 984-8100
FAX: (816) 984-8101
eMail: paul@paulmcinnes.com


_____/s/_____
Jack D. McInnes (pro hac forthcoming)
Paul McInnes LLP
2000 Baltimore, Suite 100
Kansas City, MO 64108
(816) 984-8100
FAX: (816) 984-8101
eMail: mcinnes@paulmcinnes.com