## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JUAN MENDEZ, *et al.*,<br>          Plaintiffs,<br><br>          v.<br><br>PURE FOODS MANAGEMENT GROUP,<br>INC., *et al.*,<br>          Defendants. | No. 3:14-cv-1515 (SRU) |

### RULING AND ORDER

This putative class-action asserts federal and Connecticut labor law claims against twenty-eight defendants. Seven of those defendants are Connecticut companies that operate fried-chicken restaurants, and the rest are foreign companies or individuals operating similar restaurants in other states or who reside in other states and have an ownership interest in some or all of the companies. I heard oral argument on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction (doc. # 62) filed by the foreign defendants, and I took the motion under advisement. For the reasons discussed below, that motion is granted with respect to all foreign defendants except one.

## I.      Standard of Review

### A.   Rule 12(b)(2)

A plaintiff bears the burden of showing that the court has personal jurisdiction over each defendant. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). Where, as here, there has been no discovery on jurisdictional issues and the court is relying solely on the parties' pleadings and affidavits, the plaintiff need only make a prima facie

showing that the court possesses personal jurisdiction over the defendant. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999).

In federal question cases, when the defendant resides outside the forum state, federal courts apply the forum state's personal jurisdiction rules unless the applicable federal statute provides for nationwide service of process. *See PDK Labs v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997). "Connecticut utilizes a familiar two-step analysis to determine if a court has personal jurisdiction. First, the court must determine if the state's long-arm statute reaches the foreign corporation. Second, if the statute does reach the corporation, then the court must decide whether that exercise of jurisdiction offends due process." *Bensmiller v. E.I. Dupont de Nemours & Co.*, 47 F.3d 79, 81 (2d Cir. 1995) (*citing Green v. Sha-Na-Na*, 637 F. Supp. 591, 595 (D. Conn. 1986)).

## II.   Background

The three named plaintiffs (who seek to bring claims on behalf of all others similarly situated)[1] each spent between five and seven months working respectively as a maintenance worker, a cook, and a cashier at Popeye's Chicken franchises in Hartford, Wallingford, and North Haven, Connecticut. They bring claims against twenty-eight defendants, all but two of which are business entities. Defendants Shahid Hashmi and Fazal Panezai are owners or partial owners of all or most of the companies who are their co-defendants, either directly or through their ownership of defendant Pure Foods Management Group, Inc. ("PFMG"), which in turn owns the other defendants. Seven defendants are Connecticut limited liability companies; the remainder are foreign companies or residents of other states.

---

[1] As of the filing of the amended complaint, they are joined by three opt-in plaintiffs.

The Amended Complaint is organized into seven counts: Fair Labor Standards Act ("FLSA") overtime violations (Count I), FLSA minimum-wage violations (Count II), Connecticut overtime violations (Count III), Connecticut minimum-wage violations (Count IV), Connecticut unpaid-wages violations (Count V), Connecticut recordkeeping violations (Count VI), and Connecticut meal-period violations (Count VII).

The plaintiffs seek to bring their FLSA claims (Counts I and II) pursuant to 29 U.S.C. § 216(b) as an 'opt-in' collective action on behalf of similarly situated hourly employees employed by the defendants in several states, and to bring the rest of their claims as a Rule 23 class action on behalf of all the current and former hourly employees who have worked for the defendants in Connecticut during the two years prior to the filing of the complaint.

On April 22, 2015, I granted without prejudice a Rule 12(b)(6) motion to dismiss filed by the Connecticut defendants and a Rule 12(b)(2) motion to dismiss filed by the foreign defendants. The plaintiffs re-pleaded their claims with greater specificity and expanded on their "single integrated enterprise" theory, and the foreign defendants filed the present Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.

## III.    Discussion

The essential allegations in the complaint are that all of the defendants constitute a single, integrated enterprise, and that they used various tactics (including tactics that relied upon the formality of separate corporate identities) to underpay their hourly workers. In particular, the plaintiffs allege that workers were sent to work at different Popeye's restaurants, were not paid for travel between them (and that they were required to use their own vehicles for such travel), that their total hours exceeded forty per week across restaurants but were kept beneath forty in any particular restaurant so that they were paid by each restaurant without overtime, that they

3

were routinely prevented from "clocking in" for some time after arriving at work, that they were denied lunch breaks, and that their hours were docked.

The sufficiency of the amended pleading against the Connecticut defendants has not been challenged. The personal jurisdiction question on this motion is, in essence, whether the plaintiffs' pleading of a "single integrated enterprise" or "joint employer" theory is sufficient to establish personal jurisdiction over the foreign defendants, and on that question, the proper test is disputed.

A.  <u>"Single Integrated Enterprise" or "Joint Employer" Theory</u>

The non-Connecticut defendants argue that they should not be subject to the personal jurisdiction of this court because they either have no contacts whatsoever with Connecticut, or because the plaintiffs' claims do not arise out of whatever contacts they may have with the state. Indeed, the complaint does not allege *any* specific contact between most of them and this state, let alone contacts sufficient to satisfy the state long-arm statute and the Due Process analysis. The plaintiffs' allege, however, that the many defendants together effectively constitute a single defendant, and that the in-state actions of the Connecticut companies are therefore the actions of the whole, multi-state enterprise, and personal jurisdiction is appropriate over the whole.

The plaintiffs argue that all of the defendants together are "joint employers" and that they constitute a "single integrated enterprise." The plaintiffs argue both theories and blur their distinction, but they are conceptually distinguishable, as the Second Circuit articulated them in *Clinton's Ditch Co-op Co. v. N.L.R.B.*:

> A "single employer" situation exists where two nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a single employer. The single employer standard is relevant when separate corporations are not what they appear to be, that in truth they are but divisions or departments of a single enterprise.

4

> In contrast, in a "joint employer" relationship, there is no single integrated enterprise. A conclusion that employers are "joint" assumes that they are separate legal entities, but that they have merely chosen to handle certain aspects of their employer-employee relationships jointly.

778 F.2d 132, 137 (2d Cir. 1985) (citations and quotations omitted). The plaintiffs argue both a "single integrated enterprise" (or "single employer") and a "joint employer" theory, but they seem to use the two descriptions almost interchangeably and to proceed effectively under the "single integrated enterprise" theory in the conceptualization from *Clinton's Ditch Co-op* above. They generally treat the defendants as an undifferentiated mass, both in their complaint and in their arguments, which is natural if they take all the defendants to be one integrated whole, but not if the defendants maintain meaningful separate existences and merely jointly employ their workers. Nor is it plausible that, for instance, defendant Dulles Town Center Favorite Chicken, LLC, which operates a fast-food chicken restaurant in Sterling, Virginia, was a "joint employer" (and exercised control over the employment) of a named plaintiff who was a cook or cashier at a Popeye's in Hartford, Connecticut. Rather, the plaintiffs' theory must be that the Virginia chicken restaurant and the Hartford chicken restaurant are not separate defendants at all, but are two branches of a single enterprise, and that both are named separately as defendants only because, despite their actual unity, as a formal matter they have been given fictitious separate identities in order to obfuscate the actual, unified (but unnamed) entity that encompasses them both and which is the intended defendant.

Those theories arise in different legal contexts. The Second Circuit in *Clinton's Ditch Co-op* was addressing them in the context of claims under the National Labor Relations Act rather than (as here) the FLSA. Both theories also arise in Title VII and other cases, and different courts have, in different contexts, applied different tests. The theories generally arise in discussions of liability rather than personal jurisdiction (as I will discuss below), so some courts have implied

that the different tests reflect different statutory purposes. *See, e.g.*, *Gilbert v. Freshbikes, LLC*, 32 F. Supp. 3d 594, 603–04 (D. Md. 2014) ("The FLSA employs a different test than Title VII for determining when two separate entities constitute a single enterprise for purposes of liability. The term 'employer' under the FLSA is generally interpreted broadly to achieve Congress's intent to provide a remedy to employees for their employers' wage and hour violations." (citation omitted)). The different tests are, however, always centered on the alleged employer's control over the nominally separate entity and its employees.

To determine whether there is an employment relationship for purposes of FLSA claims, the Second Circuit has applied a different test than Connecticut's courts apply for analogous state claims. The Second Circuit's four-factor (though no factor is dispositive or always necessary) "economic reality" test asks whether an employer: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984). Connecticut state courts have declined to apply the federal test to state-law claims, instead considering factors such as whether the alleged employer set the hours of employment, paid wages, exercised control over day-to-day responsibilities, or ran other daily operations. *Butler v. Hartford Technical Inst.*, 243 Conn. 454, 462 n.8, 464–65 (1997) ("[F]or purposes of § 31-72, the determination of whether an individual can be considered an employer where a corporate entity exists depends on the individual's authority to control hours and wages and responsibility for illegally withholding wages . . . . The 'economic reality' test addresses areas of operational control that are irrelevant to the effectuation of § 31-72.").

6

That four-factor Second Circuit test, which determines whether there is an employment relationship between parties under the FLSA, is generally applied in the context of two allegedly joint employers, or when there is a question whether the relevant employer is the corporate parent or its subsidiary. The Second Circuit does not appear to have directly addressed a "single integrated enterprise" theory encompassing multiple parties. Several district courts, however, have used a similar "single integrated enterprise" test "to assess whether a group of distinct but closely affiliated entities should be treated as a single employer for FLSA purposes. Under this standard, courts consider (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Juarez v. 449 Rest., Inc.*, No. 13-cv-6977 AJN, 2014 WL 3361765 (S.D.N.Y. July 2, 2014) (citations omitted). That four-factor test, used by district courts as a "single integrated enterprise" test in the FLSA context, has also been called a "single or joint employer" test and under that name was "originally developed by the National Labor Relations Board, but adopted by the Second Circuit in the Title VII context." *Gulino v. New York State Educ. Dep't*, 460 F.3d 361, 378 (2d Cir. 2006).

B. "Single Integrated Enterprise" Theory and Personal Jurisdiction

The foreign defendants argue that the "single integrated enterprise" theory, by whatever name or particular test, is a theory of FLSA *liability* and not a theory of personal jurisdiction. Because personal jurisdiction is a threshold question, they argue, it must be established for each defendant by the general principles of jurisdictional doctrine without regard for whether those defendants might constitute a single enterprise for purposes of liability. The plaintiffs dispute that analysis and accuse the defendants of being selective or misleading with their citations from

other districts. Both sides overstate the strength of their respective positions, and the authority on the issue is split.

Chief U.S. District Judge Janet C. Hall denied a motion to dismiss for lack of personal jurisdiction in a similar context, where a former employee alleged retaliation and wrongful termination in violation of the Sarbanes-Oxley Act, Family and Medical Leave Act, and Connecticut law. *Hajela v. ING Groep, N.V.*, 582 F. Supp. 2d 227 (D. Conn. 2008). She ruled that the former employee made a prima facie case that he was jointly employed by the foreign corporation, applying a four-factor "joint employer theory of liability" identical to "single integrated enterprise" test above. Despite identifying the theory as a "theory of liability" and describing the test as being "for the purposes of assigning liability," *id.* at 236, she applied the test to find personal jurisdiction and did not address whether or why the liability standard was applicable to the jurisdictional question. Other courts have done the same and similarly without comment, perhaps because the distinction between a jurisdictional test and a liability test was not raised by the parties. One district court commented on the distinction and cited Chief Judge Hall's opinion when it expressly "follow[ed] the United States District Court for the District of Connecticut and extend[ed] this theory of liability to the context of personal jurisdiction," *Martin v. ReliaStar Life Ins. Co.*, 710 F. Supp. 2d 875, 884 (D. Minn. 2010), though it did not elaborate its reasons for doing so. *See also, e.g.*, *Berry v. Lee*, 428 F. Supp. 2d 546, 553 (N.D. Tex. 2006) ("…Texas courts rely on the single business enterprise theory to assert jurisdiction.").

Some courts that have expressly addressed this question have disagreed with that conclusion, because

> "jurisdiction and liability are . . . separate inquiries." *Cent. States Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 944 (7th Cir. 2000). "[T]hat a defendant would be liable under a statute if personal jurisdiction over it could be

> obtained is irrelevant to the question of whether such jurisdiction
> can be exercised." *Id.* If a defendant does not have sufficient
> minimum contacts with the forum, the personal jurisdiction
> analysis ends "without examining the plaintiff's causes of action."
> *Id.* at 944–45. The laws on which the suit are based are irrelevant
> to the jurisdictional inquiry "because a state or federal statute
> cannot transmogrify insufficient minimum contacts into a basis for
> personal jurisdiction by making these contacts elements of a cause
> of action." *Id.* at 945. That "would violate due process." *Id.*

*E.E.O.C. v. AMX Commc'ns, Ltd.*, No. CIV. WDQ-09-2483, 2011 WL 3555831, at *6 (D. Md.

Aug. 8, 2011). *See also E.E.O.C. v. Bass Pro Outdoor World, LLC*, 884 F. Supp. 2d 499, 525–26

(S.D. Tex. 2012) ("The integrated enterprise theory . . . is a liability standard . . . not a

jurisdictional standard."); *Walker v. THI of New Mexico at Hobbs Ctr.*, 801 F. Supp. 2d 1128,

1153-54 (D.N.M. 2011) ("The single integrated-enterprise theory derives from federal law

regarding Title VII, a different body of law than law regarding minimum contacts."); *Tese-

Milner v. DeBeers Centenary A.G.*, 613 F. Supp. 2d 404, 414 (S.D.N.Y. 2009) ("[T]he Court has

not encountered, and Plaintiff does not offer any legal support for the concept that 'integrated

enterprise' has any legal meaning for the purposes of the relevant personal jurisdiction law.").

One judge in the Western District of Pennsylvania collected cases with both jurisdictional

outcomes and concluded that the "group of decisions in which the courts recognized that the

joint employer theory and similar concepts are relevant for determining liability, but are not for

determining whether a court may exercise personal jurisdictional over a party," was more

persuasive. *Enter. Rent-A-Car Wage & Hour Empl. Practices Litig. v. Enter. Rent-A-Car Co.*,

735 F. Supp. 2d 277, 319, 326–28 (W.D. Pa. 2010) (collecting cases). I agree. Personal

jurisdiction is a threshold question, and it is a question that since the 19th century has had a

constitutional dimension. *See, e.g.*, *Pennoyer v. Neff*, 95 U.S. 714 (1877) (applying a Due

Process analysis to personal jurisdiction). In one statutory scheme or another, Congress or a state

legislature might make the policy choice to allow a stricter or a more relaxed standard for what

constitutes an "employer" for purposes of liability, and we might thereby end up with various tests (as we have) for determining an employer relationship under different statutes. But legislators do not have that same flexibility to fashion a more relaxed standard of personal jurisdiction. Therefore none of the possible "single integrated enterprise" or "dual employer" tests discussed above—which might be appropriate for determining employer liability at a later stage of this litigation—are appropriate for determining in the first instance whether this court can exercise personal jurisdiction over the non-Connecticut defendants. That determination must be made according to the ordinary personal jurisdiction doctrine.

Some courts, similarly rejecting a "single enterprise" theory of personal jurisdiction, have instead favored an " 'agency test' to determine whether to impute the jurisdictional contacts of the subsidiary to the parent defendant." *Price v. Waste Mgmt., Inc.*, No. CIV. A. ELH-13-02535, 2014 WL 1764722, at *11 (D. Md. Apr. 30, 2014). That is a sensible path to take, because the plaintiffs' theory of essentially fictitious separate corporate identities is a kind of veil-piercing theory. "As the Fourth Circuit explained … the Maryland Court of Appeals has adopted the so-called 'agency' test in deciding whether to pierce the veil separating parent corporations from their subsidiaries for jurisdictional purposes. Under the agency test, the court may attribute the subsidiary's actions to the parent if the parent exerts considerable control over the activities of the subsidiary. The central inquiry is whether significant decisions of the subsidiary must be approved by the parent." *Id.* (citations and modifications omitted). The Second Circuit has used analogous reasoning in other contexts, holding, for instance, that finding a local subsidiary to be an "alter ego" of a foreign parent "would clearly support a finding of personal jurisdiction" and observing that "[i]t is also well established that the exercise of personal jurisdiction over an alter ego corporation does not offend due process." *S. New England Tel. Co. v. Global NAPs Inc.*, 624

10

F.3d 123, 138 (2d Cir. 2010). *See also Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 142–43 (2d Cir. 1991) (noting that when parties are proved to be alter egos, a "jurisdictional objection evaporates" because "the alter egos are treated as one entity").

It is fundamental that "mere ownership by a parent corporation of a subsidiary corporation present in the forum state generally will not subject the parent to personal jurisdiction in that forum." *Savage v. Scripto-Tokai Corp.*, 147 F. Supp. 2d 86, 93 (D. Conn. 2001) (internal citations omitted); *accord Jazini by Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) ("[T]he presence of the subsidiary alone does not establish the parent's presence in the state."). The plaintiffs are in effect arguing for veil piercing, but they are attempting to avoid that high bar; and the slightly varying tests for employer liability or joint-employer liability under different statutes cannot alter the jurisdictional question, which should be the same regardless of the substantive basis for the claims. The standard for treating multiple defendants together as employers for purposes of liability under specific statutes is perhaps not dissimilar to a jurisdictional standard, but it is distinct, and is likely looser.

C.  The Plaintiffs Have Not Met Their Burden to Establish Personal Jurisdiction Over All Foreign Defendants

In their original complaint and arguments on the first motion to dismiss, the plaintiffs offered interviews with and statements by Hashmi, including his public information on linkedin.com, as evidence that he centrally controls all of the companies notwithstanding their organization as distinct entities. That evidence was thin, and mostly comprised the vague and boastful comments made by a businessman, and I accordingly granted the motion to dismiss. The plaintiffs have expanded on their jurisdictional allegations, but not significantly.

The plaintiffs allege that Hashmi is a resident of Maryland, that Panezai is a resident of New Jersey, and that the two of them are business partners and owners (or partial owners) of

11

some or all of the other defendants. The Amended Complaint contains various allegations of

their contacts with Connecticut, including allegations of property ownership in Connecticut,

generic allegations that they "oversee" (Am. Compl. ¶ 7) or "assist" (*id.* at ¶ 8) in the operation

or management of the Connecticut restaurants and have "operational and management roles" (*id.*

at ¶ 75), and the conclusory allegation that "Hashmi is the ultimate decision-maker" (*id.* at ¶

95).[2] The Amended Complaint does not, however, allege what specific role if any Hashmi and

Panezai had in the alleged violations of the FLSA or analogous state law. A foreign defendant's

contacts with Connecticut are only material in this jurisdictional analysis if those contacts give

rise to the claims in this case—ownership of property in Connecticut, or ownership of

Connecticut defendant restaurants, or having a generically described role in the operation of a

Connecticut defendant business, does not suffice. The Amended Complaint contains no specific

allegations of conduct by Hashmi or Panezai giving rise to the claims in this case, and thus no

contacts sufficient to justify an exercise of personal jurisdiction over them in this case, even if

their contacts with Connecticut might justify jurisdiction in *some* case.

 Some of the allegations, such as allegations of employees being sent from one restaurant

to another as needed, or being paid from one restaurant while working in the other, tend to

support a single-integrated-enterprise theory of liability, but those allegations are almost entirely

---

[2] The Amended Complaint cites *Butler v. Hartford Tech. Inst., Inc.*, 243 Conn. 454 (1997), for
the proposition that Connecticut law "imposes personal liability on the ultimate decision-maker
for unpaid wages" (¶ 95). In *Butler*, the defendant "was the individual in control of, and solely
responsible for, all decisions with regard to wages," 243 Conn. at 464, the plaintiff "reported
directly to the defendant and was closely supervised by him," *id.*, and the defendant personally
urged the plaintiff to stay late and personally authorized (by initialing) all time cards. *Id.* at 464–
65. There are no such specific and non-conclusory factual allegations about Hashmi or Panezai,
nor to support a conclusion that either of them "possesses the ultimate authority and control . . .
to set the hours of employment and pay wages and therefore is the specific or exclusive cause of
improperly failing to do so." *Id.* at 462. *Butler* is, moreover, a case about the liability standard
under state law, and not about personal jurisdiction.

made with respect to Connecticut employees' relationships to multiple Connecticut restaurants and do not involve most of the foreign defendants (and those allegations are too spare to rise to the level of an "alter ego" theory). PFMG is an exception among the foreign defendants, because it is alleged to have a central role: operating and managing the many restaurants, hiring employees for the restaurants (including the plaintiffs, or some of them) and "commingl[ing]" the labor of restaurants (*e.g.*, Am. Compl. ¶ 6, 63, 69, 76, 77). PFMG was also named as "managing agent" in the Connecticut stores' operating agreements (*id.* at ¶ 81).

The plaintiffs only make two allegations that directly identify non-Connecticut restaurants: (1) that a supervisor "instructed Plaintiff Mena during November 2013 to drive from Charter Oak's Favorite Chicken, LLC [in Hartford] to Springfield's Favorite Chicken, LLC [in Massachusetts] to pick up food for the Charter Oak store," (Am. Compl. ¶ 69a); and (2) that the same supervisor "instructed Plaintiff Mendez to drive to Chicopee's Favorite Chicken, LLC [in Massachusetts] in August 2013 to pick up food for Albany Avenue's Favorite Chicken, LLC [in Hartford]" (*id*. at ¶ 69b). Those allegations, if true, show conduct of Connecticut actors reaching out of Connecticut into a neighboring state, but they do not show that any (much less all) of the defendants are alter egos, or that Springfield's Favorite Chicken, LLC or Chicopee's Favorite Chicken, LLC (much less any of the much more distant foreign defendants) directed any contacts into Connecticut or transacted business in Connecticut sufficient to be captured by the Connecticut long-arm statute. *See* Conn. Gen. Stat. §§ 33-929(f), 52-59b.

There are certainly no allegations sufficient to establish that chicken restaurants as far away as Virginia—even when construing the complaint in the light most favorable to the plaintiffs—are alter egos of chicken restaurants in Connecticut, have conducted business in or otherwise availed themselves of Connecticut in any way, or should be subject to personal

jurisdiction in Connecticut. Even the allegations that plaintiffs were sent to two restaurants outside of Connecticut are not sufficient to show that those two restaurants should be subject to personal jurisdiction here; rather, if those contacts give rise to claims, they are claims against the employers who sent them. The motion to dismiss is therefore granted with respect to all non-Connecticut restaurants. The Amended Complaint does not allege specific contacts by Hashmi or Panezai giving rise to the pleaded claims, and the motion is therefore granted with respect to them. The allegations that PFMG actually hired the plaintiffs, issued their paychecks, and managed their day-to-day assignments, sending them to one restaurant or another, are sufficient to show ongoing contacts in this state plausibly giving rise to the pleaded claims (and if proved might show that PFMG was an "employer" under the relevant statutes). The motion to dismiss is therefore denied with respect to PFMG. That partial denial of the motion is on the basis of allegations that the plaintiffs must still prove, and therefore PFMG will not be barred from raising the argument again at a later stage.

## IV.    Conclusion

For the foregoing reasons, the motion to dismiss is granted with respect to all foreign defendants except PFMG. Because the plaintiffs have already re-pleaded once and have not shown any reasonable probability that they will cure the jurisdictional defect on a third attempt at pleading their claims, I do not grant leave to re-plead again. If discovery on the remaining defendants results in evidence of Connecticut contacts made by dismissed defendants that plausibly give rise to pleaded claims, the plaintiffs may move for leave to amend.


So ordered.

Dated at Bridgeport, Connecticut, this 14th day of January 2016.

14

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge